THE SEHAT LAW FIRM, PLC
Cameron Sehat, Esq. (SBN: 256535)
Cameron@sehatlaw.com
Jeffrey Mikel, Esq (SBN: 350671)
j.mikel@sehatlaw.com
5100 Campus Dr., Suite 200
Newport Beach, CA 92660
Telephone: (949) 825200

Attorneys for Elicia Essex and Kristina Essex, Individually and On Behalf Of Delbert Essex's Estate

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

ELICIA ESSEX, Individually and as Personal Representative of the Estate of DELBERT ESSEX, Deceased, and KRISTINA ESSEX Individually and as Personal Representative of the Estate DELBERT ESSEX, Deceased

Plaintiff,

vs.

COUNTY OF IMPERIAL, a Governmental Entity, NAPHCARE, a Delaware limited liability company; ROSEMARY DOHERTY, individually; J. ROMAN, individually and DOES 1 through 10, inclusive,

Defendants.

Case No.: '24CV0763 WQHVET

COMPLAINT FOR DAMAGES

1. Deliberate Indifference to a Substantial Risk of Harm to Health 42 U.S.C. § 1983 14th Am. of U.S. Constitution & Gordon v. County of Orange claim
2. Monell-Failure to Train - 42 U.S.C.§1983
3. Monell-Unconstitutional, Custom, Practice & Policy-42 U.S.C. §1983
4. Monell-Ratification - 42 U.S.C. § 1983
5. State-created danger under the 14th Amendment
6. 14Th Amendment-Interference With Familial Relations - 42 U.S.C. § 1983
7. Negligence (State)
8. Bane Act C.C. 52.1 Et Seq. (State)
9. Failure to Summon Medical Care G.C. 845.6 & 844.6 (d) (State)

DEMAND FOR JURY TRIAL

**PRELIMINARY STATEMENT**

1.      Plaintiff, ELICIA ESSEX is adult daughter and a successor-in-interest to DELBERT ESSEX (hereinafter referred to as "ESSEX"). ELICIA ESSEX is also acting in an individual capacity.

2.      Plaintiff, KRISTINA  ESSEX is the wife of Delbert Essex and a successor-in-interest to DELBERT ESSEX (hereinafter referred to as "Mr. ESSEX"). KRISTINA ESSEX is also acting in an individual capacity.

3.       Plaintiffs, bring this action on behalf of DELBERT ESSEX against IMPERIAL COUNTY, NAPHCARE, DOHERTY, ROMAN and DOES 1 through 10 for monetary damages to redress for ESSEX's injuries and death resulting from Defendants' deliberate indifference to his constitutional rights and liberties. Specifically, Plaintiffs bring this action under the Fourteenth Amendment of the United States Constitution and the Civil Rights Act of 1871, as codified at 42 U.S.C. § 1983, for injuries and death resulting from the Defendants' substantial and deliberate indifference to Mr. ESSEX's health and welfare while in their custody. Plaintiffs further bring their 14th Amendment Deliberate indifference claim under the recent 9th Circuit Court of Appeals decision in *Gordon v. County of Orange et* al. *888 F.3d 1118*. Plaintiffs state a claim against the Defendants for a failure to establish policies, procedures and training which resulted in the subject incident. This is a civil action seeking damages against the Defendants for committing acts under color of law, and depriving Mr. ESSEX of rights secured by the Constitution and laws of the United States (42 U.S.C. § 1983).

4.      Defendants COUNTY of IMPERIAL, NORMAN, NAPHCARE, and DOES 1 through 10, were deliberately indifferent by, without limiting other acts and behaviors: failing to provide medical care, failing to follow its established medical care and treatment protocol; failing to protect Mr. ESSEX from harm;

failing to release Mr. ESSEX from custody in a manner as to not endanger his welfare, failing to provide necessary and appropriate medical treatment and, failing to provide his insulin, failing to provide necessary appropriate personnel necessary for the health and welfare of Mr. ESSEX, failure of continuity of care, and failing to ensure he was safely transported to a hospital for emergency care. Defendants deprived Mr. ESSEX's rights as guaranteed by the Fourteenth Amendments to the Constitution of the United States against cruel and unusual punishment.

5.      The Defendants, and Imperial County Jail medical officials, management and employees violated the ESSEX's constitutional rights and were deliberately indifferent by, without limiting other acts and behaviors: (1) deliberately ignoring and failing to heed to Mr. ESSEX's serious medical conditions, to wit, insulin-dependent diabetes, hypertension, kidney and liver disease and other cardiac conditions; (2) Denying Mr. Essex access to his medications including insulin; (3) failing to call for an ambulance to stabilize Mr. Essex's vitals on the way to the hospital; (4) failing to ensure his safe transfer to a hospital for emergency treatment; (5) failing to provide necessary and appropriate personnel for the health and welfare of Mr. ESSEX; (6) failing to ensure Mr. Essex was safely escorted to the hospital for treatment; and (7) failing to implement policies and procedures on the care and transport of critically ill inmates and/or detainees to the hospital. As a consequence of the defendants' actions, Mr. Essex suffered from numerous medical conditions, alcohol withdrawal, and ultimately died, and which action constituted a clear deprivation of his constitutional rights.

**JURISDICTION AND VENUE**

6.      This action is filed under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983, to redress injuries and the death suffered by Delbert Essex at the hands of defendants.

7.     By government claim forms dated January 13, 2023, pursuant to Government Code §911.2, Plaintiffs sent IMPERIAL COUNTY, through its Clerk of the Board of Supervisors, Notices of Claim regarding violations of Plaintiffs' and Mr. ESSEX's constitutional rights. The claims stated the time, place, cause, nature and extent of the plaintiffs' and Mr. ESSEX's injuries.

8.     On February 28, 2024, Imperial County, through its Clerk of the Board of Supervisors, rejected the government tort claims of Alicia Essex and Kristina Essex.

9.     This Court has jurisdiction over the federal civil rights claim pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over any state-law claims pursuant to 28 U.S.C. § 1367(a).

10.    At all relevant times, Mr. Essex was an inmate at the Imperial County Jail operated by the Imperial County Sheriff's Department.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

**PARTIES**

12.    At all times relevant to this complaint, Plaintiff, ELICIA ESSEX, is the adult daughter of Mr. Essex, and is an individual residing California.

13.    At all times relevant to this complaint, Plaintiff, Kristina ESSEX, is the wife of Mr. Essex, and is an individual residing in California.

14.    At all times relevant to this complaint, Delbert Essex, hereinafter referred to as "ESSEX" was a non-convicted inmate, also known as a pretrial detainee, who was examined prior to booking at the Imperial County Jail, in El Centro, California.

15.    Defendant County of Imperial, hereinafter known as "COUNTY", is a governmental entity that acts through individuals to establish its policies and that is capable of being sued under federal law.

16.    The Imperial County Sheriff's Department is a duly organized public entity, form unknown, existing under the laws of the State of California and is

responsible for supervising and operating the Imperial County Jail, a correctional division, and ensuring the health and safety of all inmates and pretrial detainees incarcerated in its corrections facilities.

17.    Upon information and belief, Naphcare, hereinafter referred to as "NAPHCARE" is a private corporation, incorporated in the state of Alabama and that acts through individuals to establish its policies and that is capable of being sued under federal law. NAPHCARE, through a contract with the COUNTY, provides correctional healthcare services at the Imperial County Jail, a County jail located in El Centro, California.

18.    Defendant Rosemary Doherty, (hereinafter "DOHERTY") is an employee of the NAPHCARE, a private corporation contracted with COUNTY to provide jail medical services at the Imperial County Jail. At all times relevant to the complaint DOHERTY was employed in the capacity of a registered nurse at the Imperial County Jail. Defendant is a duly authorized employee and agent of NAPHCARE, and was acting within the course and scope of her perspective duties as medical staff in the Imperial County Jail with the complete authority and ratification of her principal, NAPHCARE. Defendant DOHERTY is being sued in her individual capacity.

19.    Defendant J. Roman, (hereinafter "ROMAN") is an employee of the State of California, specifically employed as a California Highway Patrol officer (employee ID  21107). At all times relevant to the complaint ROMAN was employed in the capacity of a CHP officer assigned to the El Centro, California. Defendant is a duly authorized agent of the State of California, and was acting within the course and scope of his perspective duties as a CHP officer with the complete authority and ratification of her principal, State of California. Defendant ROMAN is being sued in his individual capacity.

20.    Defendant DOE 1 is an employee of the Imperial County Jail, located in Imperial County, and at times relevant to the complaint was employed in the

capacity of a correctional deputy or officer at the Imperial County Jail. Defendant DOE 1 is a duly authorized employee and agent of the Imperial County Sheriff's Office, and was acting within the course and scope of his perspective duties as staff in the Imperial County Jail with the complete authority and ratification of his principal, COUNTY.  Defendant DOE 1 is being sued in his individual capacity.

21.    DOES 2-6 are employees of COUNTY and were assigned to work at the Imperial County Jail. Defendant DOE 2-6 were acting within the course and scope of their perspective duties at the Imperial County Jail with the complete authority and ratification of their principal, COUNTY.  Defendant DOE 2-6 are being sued in their individual capacities.

22.    DOES 7-10 are employees of NAPHCARE and employed as medical staff at the Imperial County Jail. Defendant DOE 7-10 are duly authorized agents of NAPHCARE and were acting within the course and scope of their perspective duties as Imperial County Jail medical staff with the complete authority and ratification of their principal, NAPCHARE.  Defendant DOE 7-10 are being sued in their individual capacities.

23.    At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every defendant herein.

## FACTUAL ALLEGATIONS

24.    Mr. Essex was a marine and veteran having served a tour of duty for the United State Marines from 1979-1983.

25.    As a result of his military combat services, Mr. ESSEX developed symptoms comparable to Post-Traumatic-Stress-Disorder which caused him to self-medicate with alcohol.

26.    On October of 2022, Mr. Essex developed pneumonia causing him to be hospitalized for (4) four days. Also, during the same hospitalization period, the medical staff informed him that he was pre-diabetic.

27. In November of 2022, Mr. ESSEX was hospitalized due to a hyperglycemic (high blood sugar) condition had progressed to a diagnosis of Type II insulin dependent Diabetes where he was discovered to be was insulin resistant and hence, required insulin injection.

28. In March of 2023, in light of his worsening drinking problem, Mr. ESSEX checked himself into a 45-day alcohol rehabilitation program.

29. However, he was unable to maintain sobriety and relapsed with his drinking.

30. On June 22, 2023 at approximately 6:28 p.m., Mr. ESSEX was arrested for Driving Under the Influence by California Highway Patrol officer ROMAN.

31. Mr. ESSEX was highly inebriated and found behind the wheel of his pick-up truck after driving partially into a man-made river bed.

32. The tow truck driver upon arrival to tow his vehicle observed a highly intoxicated ESSEX who had to be carried out by the officer and placed into the patrol vehicle. He was subsequently taken to the Imperial County Jail presumably so he can be placed in the jail's detoxification/sobering unit.

33. Mr. Essex displayed noticeable signs or alcohol intoxication and/or symptoms of alcohol withdrawal at the time he was arrested.

34. Upon arrival at the jail's receiving triage, Rosemary DOHERTY, RN examined Mr. Essex. Mr. Essex was known to be an insulin dependent diabetic who also suffered from hypertension. Mr. Essex had a SureScript prescription for Keppra indicating he had a seizure disorder. Nurse Doherty also determined that Mr. ESSEX was suffering from dehydration and in need of IV hydration and possibly kidney and/or liver disease and Cardiac issues. DOHERTY notes that ESSEX is "intoxicated and not a good historian". She notes that he is insulin dependent. Upon information and belief, ESSEX had his insulin medication taken away from him which was previously located in his truck.

35. During his examination Mr. ESSEX was observed to be in an altered

mental state. He likely couldn't hear the nurse very well if at all as he was noted to have hearing aids but "only worked with a charger". Mr. ESSEX's blood sugar was dangerously high at 479 dl/mg. His blood pressure was also noted high at 170/84 was as was his heart rate to be tachycardic at 125 beats per minute and a respiration rate of 20 which is on the high end of the normal range. She also notes "detainee likely dehydrated and in need of IV hydration."

36.    It is unequivocal that Mr. ESSEX presented to the nurse in dire medical distress and required emergency care to stabilize his condition starting with an IV hydration and an insulin injection.

37.    Symptoms of hyperglycemic blood sugar levels nearing 500's consist of diabetic ketoacidosis including dehydration, blurred vision, weakness, nausea and vomiting, shortness of breath. If not alleviated, a person can enter into a diabetic coma.

38.    In light of his medical distress, the nurse refuses his admission to the jail and orders a squad car instead of an ambulance to transport him to the nearby medical center. Imperial County Medical staff including Nurse Doherty, referred Mr. Essex to a hospital setting for further evaluation and care prior to acceptance into jail.

39.    Per the jail medical refusal protocols, and consistent with continuity of care, and as indicated in ESSEX' "pre-booking hospital referral" entries from Nurse DOHERTY, jail medical staff instructed the admitting hospital to complete information about the detainee's health care, including indicating the medical screening conducted and discharge dates returned back to the jail staff with "the law enforcement officer" who had custody of the detainee. However, this portion of the hospital referral is entirely left blank.

40.    At approximately 8:30 p.m., despite ESSEX's highly unstable vital signs, Nurse DOHERTY failed to summon an ambulance in order for paramedics to stabilize and transport Mr. ESSEX to a hospital, nor did she administer any of his

insulin, or any I.V. hydration bag, and instead, allowed Mr. ESSEX to be taken to the hospital by ROMAN and DOE 1, who were not medically trained to provide the level of care ESSEX required.

41.    By not calling an ambulance, Nurse Doherty missed a critical opportunity to stabilize Mr. Essex's vital signs and administer his desperately needed insulin and IV hydration pending further treatment in a hospital setting.

42.    Presumably, as ROMAN and DOE 1 escorts ESSEX to their squad car, ROMAN and DOE 1 ROMAN and DOE 1 were well aware that ESSEX was in no condition to be left by himself and that he needed prompt emergency care to stabilize his blood sugar, blood pressure and his dehydrated state.

43.    However, instead of ensuring Mr. ESSEX was safely transported to the hospital, and safely relinquished custody and care of medically distressed detainee, ROMAN and DOE 1 abandons Mr. Essex somewhere outside of the Imperial County Jail as there are no record of admission from any nearby hospital or medical center.

44.    Upon information and belief, Mr. ESSEX was dropped off by officer ROMAN and DOE 1 near the Octillo Inn located at 1455 Octillo Drive El Centro, California. Officer ROMAN then issues Mr. ESSEX a "certificate of detention only" and releases him from custody.

45.    Inevitably, and in light of his dangerously high blood sugar level, his lack of insulin, and lack of any level of medical care, Mr. ESSEX passed away in the motel room sometime between 10:00 p.m. on June 22 and 11:35 am on June 23, 2023 after being discovered by motel staff.

46.    Mr. Essex was 63 years old when he passed away. Mr. ESSEX died of complication due a ketoacidosis shock, hyperglycemic shock and ensuing coma.

## FIRST CLAIM FOR RELIEF

**Deliberate Indifference to a Substantial Risk of Harm**

**to Health (42 U.S.C. § 1983 & 14th Amendment of the U.S. Constitution,**

**(By Plaintiffs Against Defendants DOES 1-10, ROMAN and DOHERTY)**

47.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 46 of this Complaint with the same force and effect as if fully set forth herein.

48.     From the time Mr. ESSEX was arrested until the time of his death, the Defendants repeatedly failed to ensure he received proper medical care in repeated violation of his 14th Amendment constitutional rights.

49.     At all relevant times to the complaint, COUNTY had a non-delegable duty to provide constitutionally adequate medical care to its patient-inmate population.

50.     COUNTY's constitutional duty also consists of the duty to safely release inmates from county custody and the duty of continuity of care to its inmates.

51.     All Defendants were informed by Mr. ESSEX and their own examination that he had serious medical needs and required a higher level of care. Defendants nevertheless failed to take the appropriate and necessary steps to ensure he received proper medical care which ultimately resulted in his death on June 23, 2023.

52.     All defendants made several intentional decisions that disregarded Mr. ESSEX's medical needs. After recognizing that abnormal vital signs meant Mr. Essex could not be safely booked at the Imperial County Jail, Nurse Doherty failed to summon an ambulance to stabilize him and safely escort him to the hospital. She further failed to establish an IV to address his dehydration and failed to administer any insulin to control his obviously high blood sugar levels. Defendant NORMAN and DOE 1, given the responsibility of ensuring Mr. ESSEX was transferred safely to a hospital for treatment, then abandoned Mr. ESSEX somewhere outside the jail. Mr. ESSEX who was likely in a state of ketoacidosis shock, in a confused state, hard of hearing, dehydrated, with both a dangerously high blood sugar and blood pressure, and alcohol impaired, was in an impaired state of consciousness.

53.    The decisions taken by all defendants placed Mr. ESSEX at a substantial risk of danger, and risk of suffering severe harm and death because every Defendant was unequivocally informed that he was medical distress, was insulin dependent, was intoxicated, suffering from dehydration, and suffering from high blood pressure and could readily observe the same.

54.    Defendants failed to take any reasonable available measures to abate that risk, even though reasonable officials, including reasonable nurses and jailers in these circumstances would have appreciated the high degree of risk involved making the consequence of the Defendants' conduct obvious. Defendant DOHERTY failed to administer ESSEX' insulin, failed to provide him with blood pressure medication, failed to administer a hydration I.V., failed to summon an ambulance, and failed to ensure proper continuity of care to make sure ESSEX was in fact seen by an emergency room medical provider to address his unstable medical condition.  Defendant ROMAN, DOE 1 and 2 through 8 failed to ensure a safe transfer of care from the county jail to a hospital, and in essence, made a judgment to unsafely release ESSEX from custody leaving him to his device despite his urgent medical needs and despite orders to transfer to a higher level of care in order to urgently address his unstable and life-threatening vital signs.

55.    All of the Defendants knew there was a substantial risk to Mr. ESSEX's health if his symptoms went untreated, denied him appropriate medical treatment, and failed to ensure he was safely received at a hospital for prompt medical care.

56.    It was objectively unreasonable for Defendants to ignore the numerous objective signs and symptoms of Mr. ESSEX's medical conditions. Any diligent nurse would have been apprised of the serious impending medical condition, and promptly summoned paramedics and/or an ambulance to stabilize Mr. ESSEX's vital signs and escort him safely to the hospital for treatment.

57.    Similarly, it was objectively unreasonable for Defendants ROMAN and DOE 1 to abandon Mr. ESSEX somewhere outside of the jail rather than safely transport him to a hospital for care.

58.    As a result of the repeated denial of proper medical care, Mr. ESSEX spent his last hours suffering unnecessary and excruciating pain culminating to his death.

59.    The denial of medical treatment exacerbated Mr. ESSEX's alcohol withdrawal symptoms to the point where his life was placed in jeopardy.

60.    The Defendants, by failing to ensure Mr. ESSEX safely arrived at a hospital for treatment and abandoning him while he was in medical distress acted with deliberate indifference to his serious health conditions and medical needs.

61.    Because Mr. ESSEX is deemed to be a pretrial detainee, the Defendants acts of deliberate indifference in failing to ensure he received medical care constituted cruel and unusual punishment in violation of the Due Process Clause of the Fourteenth Amendment of the Constitution.

62.    All Defendants were deliberately indifferent to the serious medical needs of Mr. ESSEX. It should be clear that a reasonable medical practitioner would comprehend that by failing to ensure he received proper medical care, Mr. ESSEX was exposed to undue suffering or threat of tangible residual injury, which, in the end, proved to be fatal. The Defendant jail and medical officials intentionally failed to ensure Mr. ESSEX received medical care by to call an ambulance and failing to otherwise ensure his safe arrival at a hospital.

63.    Had the Defendants and their employees, agents, and servants, not acted with deliberate indifference to the obvious and serious health needs of Mr. ESSEX he would not have died.

64.    Mr. ESSEX's death was avoidable.

65.    Such acts and omissions of the Defendants violated Mr. ESSEX's constitutional rights guaranteed under 42 U.S.C. § 1983, and the Fourteenth

Amendments to the United States Constitution. The defendants knew that by failing ensure Mr. ESSEX safely arrived at a hospital that it would lead to a fatality, but not before Mr. ESSEX endured significant pain and agony during the period preceding his death.

66.     Accordingly, Defendants each are liable to Plaintiffs both in an individual capacity and as successor-in-interest to Mr. ESSEX's' estate for compensatory damages including loss of life and opportunity of life, predeath pain and suffering, and punitive damages under 42 U.S.C. § 1983, and reasonable attorney's fees under 42 U.S.C. §1988

## SECOND CLAIM FOR RELIEF

### *Monell*-Failure to Train, Supervise and Discipline (42 U.S.C. §1983)
### (Against NAPHCARE and COUNTY)

67.     Plaintiffs repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 66 of this Complaint with the same force and effect as if fully set forth herein.

68.     At all relevant times to this complaint, COUNTY and NAPHCARE had the duty and responsibility to train, hire, instruct, monitor, and investigate staff and discipline other Defendants as well as all employees and agents of COUNTY and NAPHCARE and Imperial County Jail.

69.     Defendants COUNTY and NAPHCARE knew that Mr. ESSEX was a vulnerable inmate upon his arrest and subsequent medical evaluation and will have suffered from an emergency medical condition and that the Imperial County Jail was not equipped to care for acutely ill patients. Given the known limitations of the Imperial County Jail medical infirmary it was obvious that the jail and medical defendants would need special training in order to adequately care for and transport medically unstable patients to the hospital.

70.     The Imperial County Jail nursing and deputy staff had not been trained adequately in monitoring, documenting, and assessing patients' acute medical conditions, and/or safely transporting medically unstable patients to the hospital. This failure to train led to a substantial and fatal delay in Mr. ESSEX's care, resulting in his death.

71.     Despite COUNTY's general jail policy requiring that medically unstable inmates be seen by a doctor and transferred to a hospital for acute care, COUNTY and NAPHCARE had failed to train the Imperial County nursing staff adequately so as to recognize the urgency with which medically unstable inmates must be transported to the hospital in light of the jail's limited medical facilities and failed to trained staff in continuity of care and in the safe release of inmates from custody.

72.     Defendant COUNTY and NAPHCARE had a policy of relying on medical professionals without training them on how to implement proper procedures for documenting, monitoring and assessing inmates for medical instability, and transporting medically unstable inmates to the hospital amounting to deliberate indifference.

73.     As a result of the COUNTY and NAPHCARE's failure to adequately train and implement policies, Mr. ESSEX was caused undeserved pain and agony all culminating in his death on June 23, 2023.

**THIRD CLAIM FOR RELIEF**

***MONELL*- UNCONSTITUTIONAL CUSTOM, POLICY**

**OR PRACTICE (42 U.S.C. §1983)**

**(On behalf of the Estate of DELBERT ESSEX and Against Defendants COUNTY, NAPHCARE)**

74.     Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 73 of this Complaint with the same force and effect as if fully set forth herein.

75.     On and for some time prior to June 22, 2023, (and continuing to the present date) Defendants COUNTY and NAPHCARE deprived Plaintiffs and Mr. ESSEX of the rights and liberties secured to them by the Fourth, and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with reckless and deliberate indifference to the rights and liberties of Plaintiffs and Mr. ESSEX and of persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized county custom, policy, and practice of: acting deliberately indifferent to the serious medical needs of inmates when defendants failed to take any meaningful corrective measures despite being previously placed on notice of their egregious practices resulting in prior deaths. The following is a list of *Monell* violations:

   (a)  Failing to implement policies and procedures on basic symptom recognitions and assessment of inmates who are in medical distress;

   (b)  Routinely failing to train medical and detention staff on the ensuring medically unstable inmates are safely transported to the hospital.

   (c)  Inadequately supervising, training, controlling, assigning, and disciplining employees including COUNTY Jail staff;

   (d)  Routinely neglecting and ignoring gravely ill inmates and enabling the custom and practice of medically distressed inmates to rely upon themselves to seek emergency medical treatment;

   (e)  Engaging in the custom and practice of discriminating against chronically ill inmates and withholding emergency medical treatment until an inmate is at a near-death condition;

   (f)  Routinely preventing inmates access to medical doctors, due to a custom and practice of a failed booking policy;

   (g) Routinely denying to treat more severe co-morbid medical conditions due to a "*one condition at a time*" medical policy.

By reason of the aforementioned policies and practices of the DOE Defendants and COUNTY, Plaintiffs have suffered the loss of their father and husband, DELBERT ESSEX.

76. Defendant COUNTY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs and other individuals similarly situated.

77. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant COUNTY, NAPHCARE acted with an intentional, reckless, and callous disregard for the well-being Mr. ESSEX and his constitutional as well as human rights.

78. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendant COUNTY, NAPHCARE were affirmatively linked to and were a significantly influential force behind the Mr. ESSEX's death.

79. As a direct and legal result of Defendants' acts, Plaintiffs have suffered damages, including, without limitation, past pain and suffering, loss of life, loss of opportunity for life, and compensatory damages. Such damages including attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained. Additionally, Defendants are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

80. As a direct and proximate result of the defendants' aforementioned conduct, the Plaintiffs, successors-in-interest for Mr. ESSEX, set forth that the defendants are liable to them for damages including but not limited to funeral and

burial related expenses, and damages to provide for the Plaintiffs' deprivation and injury as a result of the loss of the Mr. ESSEX's support, company, comfort, counsel, familial relations, aid, association, care and services.

## FOURTH CLAIM FOR RELIEF

### 14th AMENDMENT-STATE CREATED DANGER

**(Asserted by Plaintiffs Against Defendants DOHERTY, ROMAN, DOE 1 and DOES 2-10)**

81.     Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 80 of this Complaint with the same force and effect as if fully set forth herein.

82.     Under the Fourteenth Amendment, DECEDENT had the constitutional right to be free from defendants' affirmative action of placing him in a position of actual, particularized danger. In this case, defendants knew of DECEDENT's medical distress. Mr. ESSEX's condition was known to jail and medical staff from the time of his arrest and through DOHERTY's examination of Mr. Essex upon his arrival at the jail.

83.     Since his arrest, DECEDENT was in the defendants' care and custody, and as such, Defendants had an affirmative duty not to expose DECEDENT to more danger than he would have been prior to their encounter.

84.     By blatantly failing to call an ambulance and/or otherwise ensure Mr. Essex safely arrived at the hospital, when it is obvious he needed to be hospitalized, by depriving him of access to his insulin which was confiscated from him upon arrest, and by abandoning him outside of the jail without his insulin and while he was medically unstable, Defendants made affirmative decisions which placed the Decedent is a position far worse than he was before being placed into the custody and care of the defendants.

85.      Defendants' affirmative acts created a foreseeable risk that DECEDENT would be in grave danger and/or die without ensuring he received proper medical treatment and referral to a higher level of care.

86.      Accordingly, Defendants each are liable to Plaintiffs for compensatory and punitive damages under 42 U.S.C. § 1983 and the 14th Amendment, as well as for wrongful death damages.

**FIFTH CLAIM FOR RELIEF**

**14th AMENDMENT-INTERFERENCE WITH FAMILIAL RELATIONS**

**(Asserted by all Plaintiffs Against all named individual Defendants and DOES 2-10)**

87.      Plaintiffs repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 86 of this Complaint with the same force and effect as if fully set forth herein.

88.   DELBERT ESSEX had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with his daughter ELICIA ESSEX and wife KRISTINA ESSEX.

89.   Plaintiff ELICIA ESSEX had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with her father, DELBERT ESSEX.

90.   Plaintiff KRISTINA ESSEX had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a

manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with husband, DELBERT ESSEX.

91.   The aforementioned actions of Defendants, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of Mr. ESSEX and Plaintiffs, and with deliberate indifference and purpose to harm unrelated to any legitimate law enforcement objective.

92.   As a direct and proximate result of these actions, Mr. ESSEX experienced pain and suffering and eventually died. Defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with Mr. ESSEX.

93.   As a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. ESSEX, and will continue to be so deprived for the remainder of their natural lives.

94.   As a result of their misconduct, Defendants are liable for Mr. ESSEX's injuries, either because they were integral participants in the use of excessive force and failure to provide medical care, or because they failed to intervene to prevent these violations.

95.   Defendants' conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. ESSEX and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.

96.   Plaintiffs bring this claim both individually and seek wrongful death and 14th amendment parental rights damages under this claim. Plaintiffs also seeks punitive damages and attorneys' fees under this claim.

## SIXTH CLAIM FOR RELIEF

### NEGLIGENCE

**(Against Defendants DOHERTY, ROMAN, DOE 1, COUNTY, and DOES 2-10)**

97.    Plaintiffs repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 96 of this Complaint with the same force and effect as if fully set forth herein.

98.    Defendants DOHERTY, ROMAN, DOE 1, COUNTY, and DOES 2-10, and each of them, have a duty to operate and manage the Imperial County Jail in a manner so as to prevent the acts and/or omissions alleged herein. Said defendants owed ESSEX, as an inmate in defendants' custody, care and control, a duty of due care to protect his health and physical safety.

99.    Defendants DOHERTY, DOE 1, ROMAN, COUNTY, and DOES 2-10 were negligent and their conduct fell below a reasonable standard of care when they failed to discharge their duties as jail deputies to Mr. ESSEX. It was foreseeable that as a result of Defendants' acts and omissions, as described above, Mr. ESSEX's symptoms would worsen, resulting in his physical injury, suffering, and death. Defendants' breach proximately caused injuries and damages to Mr. ESSEX as Plaintiffs claim herein.

100.   As a direct and proximate result of the defendants' aforementioned conduct, the Plaintiffs set forth that the defendants are liable to her for damages including but not limited to funeral and burial related expenses, and damages to provide for the Plaintiff's deprivation and injury as a result of the loss of Mr. ESSEX's support, comfort, counsel, familial relations, aid, association, care and services.

//
//
//

## SEVENTH CLAIM FOR RELIEF

### BANE ACT C.C. 52.1 Et Seq. (State)

### (Asserted by Plaintiffs individually and On behalf of the Estate of DELBERT ESSEX Against all individual named Defendants, NAPHCARE, COUNTY and DOES 2-10)

101.    Plaintiff hereby repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 100 of this Complaint with the same force and effect as if fully set forth herein.

102.    California Civil Code, Section 52.1 (*the Bane Act),* prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights. However, under *Reese v. Cnty of Sacramento, 888 F.3d 1030, 1042-4043 (9th Cir. 2018),* the Bane Act <u>does not require</u> the "threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation Alleged.

103.     Specific intent does not require a showing that a defendant knew he was acting unlawfully; reckless disregard of the right at issue is all that is necessary [1]*Luttrell v. Hart,* 2020 WL 5642613.

104.    On information and belief, Defendants while working for the COUNTY and/or NAPHCARE and acting within the course and scope of their duties, denied Mr. ESSEX necessary healthcare that could have prevented his death. All defendants were deliberately indifferent toward Mr. ESSEX when they, denied Mr. Essex access to his insulin after his arrest, chose not call an ambulance, and/or otherwise ensure his safe transport to a hospital for treatment.

---

[1] Per *Luttrell*, if a Plaintiff adequately pleads a claim for deliberate indifference which requires a pleading of reckless disregard, then he was sufficiently alleged the "intent" element required for the Bane Act. Under *Reese*, "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of that right. Some courts such as *Polance v. California 2022 WL 1539784, at\*4 (N.D. Cal. May 16, 2022)* have deemed the application of the Bane Act appropriate when there is a showing of deliberate indifference toward correctional inmates ("observing that "defendant who acts with deliberate indifference toward an inmate may satisfy the 'threat, intimidation, or coercion' element, as the custody context makes that violation especially coercive" and collecting

105.   When Defendants committed the above acts, they acted with the specific intent required under the Bane Act. Defendants intentionally and spitefully committed the above acts to deny Mr. ESSEX the necessary healthcare that could have prevented his death.

106.   Mr. ESSEX reasonably believed and understood that he was being denied the right to adequate healthcare.

107.   Defendants successfully interfered with the above civil rights of Mr. ESSEX and Plaintiffs.

108.   The conduct of Defendants was a substantial factor in causing Plaintiffs' harms, losses, injuries, and damages.

109.   Defendants COUNTY and NAPHCARE are vicariously liable under California law and the doctrine of *respondeat superior*.

110.   The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for Mr. ESSEX and Plaintiffs' rights, justifying an award of exemplary and punitive damages as to the defendants.

111.   Plaintiffs bring this claim as a successor-in-interest to Mr. ESSEX, and seek survival damages under this claim. Plaintiffs also seek punitive damages and attorneys' fees under this claim.

## EIGHTH CLAIM FOR RELIEF

### FAILURE TO SUMMON MEDICAL CARE - G.C. §845.6 AND §844.6
### (Against Defendants NAPHCARE, ROMAN, COUNTY, DOE 1, DOHERTY and DOES 2-10)

112.    Plaintiffs repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 111 of this Complaint with the same force and effect as if fully set forth herein.

113.    California Government Code § 845.6 creates an affirmative duty for jail staff "to furnish or obtain medical care for a prisoner in his custody."  Mr. ESSEX desperately required prompt medical attention from Defendants. Defendants had

actual knowledge of Mr. ESSEX's need for immediate medical care and deliberately chose to not ensure Mr. ESSEX received proper medical care. Defendants failed to discharge the duty imposed upon them by California Government Code § 845.6. As a direct and proximate result of Defendants' acts and/or omissions, hereinabove described, Mr. ESSEX suffered severe the symptoms of his medical conditions and ultimately died.

114.   Defendants are liable for their employees' breach of their duty to summon required immediate medical care while acting in the course and scope of their employment under the doctrine of respondeat superior.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request entry of judgment in their favor and against all Defendant COUNTY, NAPHCARE, DOHERTY, ROMAN and DOE 1 10, inclusive, as follows:

1.      For compensatory damages according to proof including predeath pain and suffering, loss of life, loss of opportunity for life, all damages belonging to the estate of Delbert Essex, and wrongful death damages to Plaintiffs.

2.      For punitive damages against the individual defendants in an amount to be proven at trial;

3.      For interest;

4.      For reasonable costs of this suit and attorneys' fees per 42 U.S.C. §1988; and C.C. 52.1 et seq.

5.      For such further other relief as the Court may deem just, proper, and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.

Date: April 29, 2024          THE SEHAT LAW FIRM, PLC


                              By: */s/ Jeffrey Mikel, Esq.*____
                              Cameron Sehat, Esq.
                              Attorneys for Plaintiffs,