UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELICIA ESSEX et al., <br><br> Plaintiffs, <br><br> COUNTY OF IMPERIAL et al., <br><br> Defendants. | CASE NO. 3:24-cv-00763-L-VET <br><br> **ORDER DENYING MOTIONS TO DISMISS** <br><br> [ECF NOS. 17, 26] |

Pending before the Court are two motions. Defendants Naphcare, Inc. and Rosemary Doherty filed a motion to dismiss for failure to state a claim and strike the prayer for punitive damages. (ECF No. 17.) Defendant County of Imperial filed a motion to dismiss for failure to state a claim. (ECF No. 26.) Plaintiffs opposed both motions and Defendants replied. The Court finds the motions suitable for decision without oral argument. *See* Civ. Loc. R. 7.1(d). For the reasons stated below, Defendants' motions are denied. Plaintiffs have agreed to dismiss the sixth and eighth causes of action against Naphcare and Rosemary Doherty.

I.   **BACKGROUND**

Plaintiffs alleged that Delbert Essex was arrested by California Highway Patrol Officer Defendant J. Roman for driving under the influence and taken to the Imperial County Jail in El Centro. Mr. Essex was highly inebriated when he was brought to jail.

Upon arrival he was examined by Defendant Rosemary Doherty, a registered nurse ("Nurse"). The Nurse was employed by Defendant Naphcare, Inc. ("Naphcare"), a business entity which contracted with Defendant County of Imperial ("County") to provide jail medical services.

Nurse Doherty noted that Mr. Essex was insulin dependent and suffering from serious medical conditions. She determined he needed intravenous ("IV") hydration. His vital signs were abnormal: a tachycardic heart rate, high respiration rate and blood pressure, and dangerously high blood sugar. Based on these observations, the Nurse refused to admit Mr. Essex to jail and ordered him transported to a hospital for further evaluation and care. She prepared a "Pre-Booking Hospital Referral" and instructed the admitting hospital to complete information about Mr. Essex's health, including medical screening. The Nurse did not administer any insulin or IV hydration to Mr. Essex. Mr. Essex's own insulin medication was confiscated when he was arrested. The Nurse did not order an ambulance for his transport to the hospital but chose transport by squad car.

Officer Roman and another officer, Defendant Doe 1 (collectively, "Officers"), knew that Mr. Essex's condition was unstable when they took him from the jail in the squad car. Nevertheless, they did not take Mr. Essex to the hospital. They abandoned him near the Ocotillo Inn in El Centro and issued a "Certificate of Detention Only" before releasing him from custody. Mr. Essex went into coma and died in his hotel room from complications due to ketoacidosis shock and hypoglycemic shock.

Mr. Essex's adult daughter Elicia Essex, and his widow Kristina Essex (collectively, "Plaintiffs") filed this action individually and as personal representatives of Mr. Essex's estate. They assert eight causes of action. The first five causes of action, based on 42 U.S.C. § 1983, assert claims for violation of the Fourteenth Amendment of the United States Constitution by (1) deliberate indifference to serious medical needs against the Nurse and the Officers; (2) failure to train jail nursing and deputy staff the County and Naphcare; (3) knowingly maintaining a custom, policy, and practice of deliberate indifference against the County and Naphcare; (4) exposing Mr. Essex to

greater danger in custody than he was exposed to prior to arrest against the Nurse and the Officers; and (5) interference with the right to familial association against the Nurse and the Officers.  In the remaining causes of action, Plaintiffs assert violations of California law as follows: (6) negligence against the Nurse, the Officers, and the County; (7) interference with Mr. Essex's constitutional rights in violation of the Bane Act against all Defendants; and (8) failure to summon medical care against all Defendants.  In their Opposition, Plaintiffs agreed to dismiss the sixth and eighth causes of action against Naphcare and the Nurse.  (ECF No. 21, "Opp'n. to Naphcare" at 11.)

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over claims alleging violation of the United States Constitution.  The Court exercises supplemental jurisdiction over State law claims pursuant to 28 U.S.C. § 1367.

## II. DISCUSSION

Defendants move to dismiss the complaint based on Federal Rule of Civil Procedure 12(b)(6)[1] for failure to state a claim.  A Rule 12(b)(6) motion tests the sufficiency of the complaint.  *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).[2]  Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1008 (9th Cir. 2018).

Generally, a plaintiff must allege only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*").  The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1]   All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

[2]   Unless otherwise noted, internal quotation marks, ellipses, brackets, citations, and footnotes are omitted from citations.

1  (2009) ("*Iqbal*").  This standard demands more than "a formulaic recitation of the
2  elements of a cause of action," or "naked assertions devoid of further factual
3  enhancement."  *Id*.  A plaintiff must provide "fair notice" of the claim being asserted and
4  the "grounds upon which it rests."  *Twombly*, 550 U.S. at 555.

5  In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual
6  allegations in the complaint and construe them most favorably to the nonmoving party.
7  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006).  Legal
8  conclusions need not be taken as true merely because they are couched as factual
9  allegations.  *Twombly*, 550 U.S. at 555.  "The court is not required to accept as true
10  allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable
11  inferences."  *Khoja,* 899 F.3d at 1008.

12  Initially, Defendants moved to dismiss all survival causes of action based on
13  Plaintiffs' failure to file declarations of successors-in-interest.  (ECF No. 17-1, "Naphcare
14  Mot." at 15-16; ECF No. 26-1, "County Mot." at 8-9.)  Plaintiffs have since cured the
15  alleged defect (ECF Nos. 20, 23, 28, 29), and Defendants no longer press the issue (*see*
16  ECF No. 24, "Naphcare Reply;" ECF No. 31, "County Reply").

17  **A.     Constitutional Claims Against Nurse Doherty**

18  To state a claim under 42 U.S.C. § 1983 for violation of federal constitutional
19  rights, a plaintiff must allege: (1) that the conduct complained of was committed by a
20  person acting under color of state law, and (2) that such conduct deprived the plaintiff of
21  a federal constitutional or statutory right.  *Jensen v. Lane County.*, 222 F.3d 570, 574 (9th
22  Cir. 2000).  A public employee acts under color of state law within the meaning of
23  section 1983 while acting in his or her official capacity or while exercising
24  responsibilities pursuant to state law.  *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir.
25  2000).

26  1.   Deliberate Indifference to Serious Medical Needs

27  Plaintiffs allege that Nurse Doherty examined Mr. Essex upon arrival to jail,
28  refused to admit him based on his medical condition, and did not attempt to stabilize him

before instructing officers to transport him to the hospital by squad car. Plaintiffs claim that in failing to stabilize Mr. Essex and choosing transport by a squad car, the Nurse was deliberately indifferent to Mr. Essex's serious medical needs in violation of his constitutional rights.

To state the claim, Plaintiffs must allege the following:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. County of Orange,* 888 F.3d 1118, 1125 (9th Cir. 2018). The claim is "evaluated under an objective deliberate indifference standard." *Id.* "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* Furthermore, alleging a mere lack of due care is insufficient because the plaintiff must ultimately "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

The Nurse argues that Plaintiffs cannot state a claim because, as reflected in the allegations, she referred Mr. Essex to hospital care with his best interests in mind and Plaintiffs do not allege she had any reason expect that the Officers would abandon Mr. Essex rather than take him to the hospital. These arguments are rejected, as they do not give full credit to the allegations and the reasonable references the Court must draw in Plaintiffs' favor. *See Huynh*, 465 F.3d at 997, 999 n.3.

The Court takes judicia notice of the Pre-Booking Hospital Referral and medical record the Nurse created when she examined Mr. Essex. (*See* ECF Nos. 17-2 & 27-1, "Pre-Booking Hospital Referral;" ECF Nos. 22 & 27-1, "Medical Record.") To the extent the County objects to judicial notice of these documents (County Reply at 4-5), the

objection is overruled because the documents are incorporated by reference into the Complaint. (*See* ECF No. 1, "Compl.," ¶¶ 34-35, 39.) *See Khoja*, 899 F.3d at 1008.

In the Pre-Booking Hospital Referral, the Nurse noted that Mr. Essex was intoxicated and an "insulin dependent diabetic (in need of insulin) and also has HTN [hypertension]." She further noted that Mr. Essex was "likely dehydrated and in need of IV hydration." The Nurse recorded Mr. Essex's vital signs. Based on the vital signs, Plaintiffs allege that Mr. Essex was in "dire medical distress." (Compl. ¶ 36.) In addition, according to the Pre-Booking Hospital Referral, his "blood sugar [was] 379 dl/mg," and the subsequent Medical Record shows his "glucose [was] 479." Plaintiffs argue that Mr. Essex's sugar was dangerously high. (Compl. ¶¶ 35, 37.)

The Nurse concluded that Mr. Essex "need[ed] medical clearance prior to booking in jail." (Pre-Booking Hospital Referral.) The Pre-Booking Hospital Referral form included three choices for "Mode of Transportation" to the hospital: "Squad Car," "Ambulance," and "Other." The Nurse chose "Squad Car." The Medical Record further reflects that Mr. Essex was not given insulin. Mr. Essex's own insulin was taken from him when he was arrested. (Compl. ¶¶ 34, 84.) Plaintiffs further alleged that Mr. Essex was not given any hydration. (*Id.* ¶ 40). "Essex died of complication due to ketoacidosis[3] shock, hyperglycemic[4] shock and ensuing coma." (*Id.* ¶ 46.)

Plaintiffs sufficiently alleged that the Nurse made several decisions regarding the condition of Mr. Essex's confinement – he was not well enough to be booked into jail, he

---

[3]    "Diabetic ketoacidosis is a serious complication of diabetes. [¶] The condition develops when the body can't produce enough insulin. [¶ U]ntreated diabetic ketoacidosis can lead to death." https://www.mayoclinic.org/diseases-conditions/diabetic-ketoacidosis/symptoms-causes/syc-20371551 (last visited 1/28/2025).

[4]    Hyperglycemia or "dangerously high blood sugar … can lead to diabetic coma. [¶] If it's not treated, a diabetic coma can result in death." https://www.mayoclinic.org/diseases-conditions/diabetic-coma/symptoms-causes/syc-20371475 (last visited 1/29/2025).

should be taken to the hospital not by ambulance but by squad car, and she decided not to provide for insulin or hydration until Mr. Essex was admitted to the hospital. Plaintiffs alleged that these decisions placed Mr. Essex at substantial risk of harm. (Compl. ¶ 53.) This assertion is sufficiently supported by the facts alleged in the Complaint, including the Pre-Booking Hospital Referral and Medical Record. Plaintiffs further alleged that given Mr. Essex's condition, a reasonable nurse would have called for an ambulance "in order for paramedics to stabilize and transport Mr. Essex to a hospital[.]" (Compl. ¶¶ 40, 54-56.) Based on the Pre-Booking Hospital Referral, ambulance was one of the options available to the Nurse.

Finally, Plaintiffs adequately alleged causation. (*See id.* ¶¶ 58-60.) Their assertions of the causal link between the Nurse's decisions and Mr. Essex's suffering and death are adequately supported by the detailed allegations of his medical condition when he left the Nurse's care and the Nurse's knowledge about his medical condition. This theory of causation is independent of the allegation that the Officers did not transport Mr. Essex to the hospital but abandoned him instead. Accordingly, Plaintiffs have adequately alleged a claim for deliberate indifference to serious medical needs against the Nurse.

### 2. State-Created Danger

Plaintiffs alleged that individual Defendants knew that Mr. Essex was in medical distress. They claim that by depriving him of his insulin, failing to call an ambulance and/or otherwise assuring his transfer to the hospital, and abandoning him outside the jail without insulin, they placed him in a worse position than he was in before he came into Defendants' custody. (Compl. ¶¶ 82-84.)

To state claim under the state-created-danger doctrine, a plaintiff must allege two elements. First a plaintiff must allege that the defendant's "affirmative conduct … exposed him to an actual, particularized danger that he would not otherwise have faced." *Polanco v. Diaz,* 76 F.4th 918, 926 (9th Cir. 2023). *Id.* "Second, a plaintiff must allege that the state official acted with deliberate indifference to that known or obvious danger." *Id.*

1    The Nurse argues Plaintiffs cannot state a claim against her because they did not
2 allege that she affirmatively placed Mr. Essex in a position of danger.  In addition, she
3 argues that Plaintiffs failed to allege causation.  Plaintiffs counter that the Nurse placed
4 Mr. Essex in a position to danger by failing to provide insulin either by administering it
5 or calling an ambulance.  Plaintiffs allege that had the Nurse requested transport by
6 ambulance, the paramedics could stabilize Mr. Essex on the way to the hospital.  (Compl.
7 ¶¶ 40-41.)
8    Drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs sufficiently alleged
9 that the Nurse knew that Mr. Essex was in medical distress to the extent that he could not
10 be booked into jail and should be taken to the hospital.  She also knew that he needed
11 insulin.  Her decisions under these circumstances to not administer insulin and choose
12 transport by squad car placed Mr. Essex in greater danger than he was in before his arrest,
13 when he could use his own insulin medication.  This theory of endangering Mr. Essex's
14 life and health is independent of the allegations that that the Officers subsequently
15 abandoned Mr. Essex and are sufficient to state a claim even if the Nurse could not have
16 foreseen that the Officers would abandon him.  Accordingly, Plaintiffs have adequately
17 alleged a claim under the state-created danger doctrine against the Nurse.

18              3.    Interference with Familial Association

19    Plaintiffs argue that the Nurse's conduct violated their right to family integrity.
20 (Compl. ¶¶ 88-96.)  It is undisputed that Plaintiffs have standing to assert a claim for
21 deprivation of their liberty interest in the companionship and society of their father and
22 husband.  Official conduct that shocks the conscience is cognizable as a violation of this
23 constitutional right.  *See Lemire v. Cal. Dept. of Corrections and Rehab.,* 726 F.3d 1062,
24 1075 (9th Cir. 2013).
25    Defendants argue that Plaintiffs failed sufficiently to allege that the Nurse's
26 conduct shocks the conscience.  However, deliberate indifference may rise to the
27 requisite conscience-shocking level.  *Lemire,* 726 F.3d at 107.  "A prison official's
28 deliberately indifferent conduct will generally shock the conscience so long as the prison

official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Id.* As discussed in the context of deliberate indifference to a serious medical need, and as reflected in the Pre-Booking Hospital Referral and the Medical Record, the Nurse had an opportunity to deliberate before deciding how to proceed regarding Mr. Essex. Accordingly, Plaintiffs have sufficiently alleged a claim for interference with familial association.

### B. Constitutional Claims Against Naphcare and the County

Plaintiffs assert two constitutional claims against the entity Defendants Naphcare and the County. They allege that Defendants failed to train their employees and maintained unconstitutional policies, practices, and customs. (Compl. ¶¶ 67-80.)

Naphcare does not dispute that it can be subject to liability under section 1983 as a private company acting under the color of state law. Naphcare and the County can potentially be held liable under *Monell v. Dep't of Soc. Servs,* 436 U.S. 658 (1978), if they caused the constitutional violations at issue. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989) ("*Harris*"). Section 1983 does not provide for respondeat superior liability. *Monell,* 436 U.S. at 690, 694.

A plaintiff can show that an entity Defendant caused the alleged constitutional violation if the execution of its policy, practice, or custom inflicted the injury, *Harris*, 489 U.S. at 385, and the policy is "the moving force behind the constitutional violation," *id* at 389. Alternatively, it can be shown if a constitutional policy is unconstitutionally applied by an employee, the employee was not adequately trained, and the injury was caused by the failure to train. *Id.* at 387.

With regard to failure to train liability attaches "[o]nly where a failure to train reflects a deliberate or conscious choice[,]" *i.e.,* a policy. *Id.* at 389*; see also id.* at 390 (if training is inadequate, the issue is "whether such inadequate training can justifiably be said to represent a … policy.").

/ / / / /

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 391.

Plaintiffs alleged that the Imperial County Jail was not equipped to care for medically unstable inmates. (Compl. ¶ 69.) Accordingly, the County had a policy requiring that medically unstable inmates be seen by a doctor and transferred to the hospital. (*Id.* ¶ 71.) In addition, the County and Naphcare had a policy of relying on medical professionals to implement their customs, policies, and practices regarding medically unstable inmates. (*Id.* ¶ 72.) Based on the foregoing, Plaintiffs alleged that the jail personnel needed special training to assess, monitor, and transport medically unstable inmates to the hospital; however, neither Naphcare nor the County provided adequate training. (*Id.* ¶¶ 69-71, 75.) Plaintiffs further alleged that prior inmate deaths put the County and Naphcare on notice that their policies, customs, and practices relating to medically unstable inmates were inadequate. (*Id.* ¶¶ 75, 76.) Plaintiffs claim that by failing to reform their customs, policies, and practices in light of their known inadequacy, Defendants acted with deliberate indifference to the foreseeable consequences. (*Id.* ¶ 76.) Accordingly, Plaintiffs contend that the inadequate customs, policies, and practices led to the delay in Essex's care and ultimately his death. (*Id.* ¶¶ 70, 75.)

First, Defendants argue that Plaintiffs' allegations lack factual specificity. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555. The allegations must be sufficient to "raise a right to relief above the speculative level on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id*. They must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. However, plaintiffs are not expected to plead evidence, *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018), *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011), nor are they required to plead the "probability" of their entitlement to relief, *Iqbal*, 556 U.S. at 678.

Drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs alleged that the County and Naphcare had a policy, practice, or custom of inadequately training their employees such as arresting officers and jail nurses, who came into contact with medically unstable detainees. Given the jail's otherwise inadequate resources to care for such detainees, the need for training jail staff regarding the assessment, monitoring, and transport of medically unstable detainees was obvious. Further, Plaintiffs alleged that prior jail deaths put Defendants on notice of the inadequacy of their policy, practice, or custom. This is sufficient to allege deliberate indifference to the constitutional rights of medically unstable detainees. Finally, Plaintiffs alleged that the inadequacy in Defendants' policies, practices, and customs ultimately caused Mr. Essex's death. Plaintiffs have alleged their *Monell* claims with sufficient specificity to give Defendants fair notice to prepare their defense.

To the extent Naphcare argues that Plaintiffs did not allege that it was on notice of the inadequacy of its policies, practices, and customs, or that more than one isolated incident is required to state a *Monell* claim, the argument is rejected because Plaintiffs adequately pled notice and that the need for training was obvious. (*See, e.g.,* Compl. ¶¶ 69-71, 75, 76.)

Finally, the County argues that its policies are not relevant to Plaintiffs' claims because Mr. Essex was not booked into jail. This argument is unavailing. Whether Mr. Essex was booked into jail or not, he was in County custody from the time he was arrested until he was released by the Officers. (*See* Compl. ¶¶ 30-44.) Furthermore, the

County's argument is negated by its own policy. The Court takes judicial notice of Imperial County Sheriff's Office Policy No. 902. (ECF No. 27-2, "Policy No. 902.") The Court may take judicial notice of this policy as a matter of public record. *See Khoja,* 899 F.3d at 999. According to Policy No. 902, Essex was in County's "temporary custody."

For the foregoing reasons, Plaintiffs have adequately alleged *Monell* claims against Naphcare and the County.

### C. State Law Claims

#### 1. Violation of the Bane Act

Plaintiffs alleged that all Defendants violated the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1 ("Bane Act"). Specifically, they alleged that Defendants "intentionally and spitefully" interfered with Mr. Essex's constitutional rights when they denied him access to his own insulin and chose not to call an ambulance or ensure safe transport to the hospital. (*Id.* ¶¶ 104-05.)

In relevant part, the Bane Act provides that "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States … has been interfered with, or attempted to be interfered with … may institute and prosecute in their own name and on their own behalf a civil action[.]" Cal. Civ. Code § 52.1(c). The requisite interference or attempted interference must be by means of "threat, intimidation, or coercion[.]" *Id.* § 52.1(b).

Accordingly, to state a Bane Act claim, a plaintiff must allege intentional interference or attempted interference with constitutional rights by threat, intimidation, or coercion. *See* Judicial Council of Cal. Civ. Jury Instr. 3066; *Cornell v. City and County of San Francisco,* 17 Cal. App. 5th 766, 804 (2017); *Reese v. County of Sacramento*, 888 F.3d 1030, 1044 (9th Cir. 2018). The threat, intimidation, or coercion element need not be separate from the alleged underlying constitutional violation and is met when the alleged violation occurs in custody. *See Cornell,* 17 Cal. App. 5th at 798-802 & n.31. In

addition, a plaintiff meets the specific intent requirement by alleging that the defendant acted with a reckless disregard of the underlying constitutional right. *Id.* at 806.

> It is not necessary for the defendants to have been thinking in constitutional or legal terms at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.

*Reese,* 888 F.3d at 1045.

All moving Defendants argue that Plaintiffs cannot state a Bane Act claim. They make two arguments. First, they argue that the claim should be dismissed because Plaintiffs failed to allege that Defendants violated any constitutional rights. This argument is unavailing because the claims alleging violation of constitutional rights survive the pleading challenge as provided in this Order.

Second, the moving Defendants contend that Plaintiffs failed to allege reckless disregard. Plaintiffs counter that their allegations are sufficient. The Court agrees. As to the Nurse, the Court has found that Plaintiffs adequately alleged she was deliberately indifferent to Mr. Essex's serious medical needs. Deliberate indifference to serious medical needs is "akin to reckless disregard." *Gordon,* 888 F.3d at 1125. The Court finds that Plaintiffs' allegations regarding the Nurse's knowledge of Mr. Essex's medical distress and decisions which delayed administration of insulin until arrival to the hospital are sufficient to support an inference of reckless disregard. As to Naphcare and the County, Plaintiffs alleged that the need for training regarding medically unstable detainees was obvious and that Defendants were on notice of the inadequacy of their training policy. The Court finds these allegations sufficient to support an inference of reckless disregard. Accordingly, Plaintiffs have sufficiently alleged a Bane Act claim against the moving Defendants.

### 2. Failure to Summon Medical Care

Plaintiffs claim that Defendants violated California Government Code section 845.6, which provides that

> a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

The County argues that Section 845.6 does not apply because Mr. Essex was not a prisoner. This argument is foreclosed by California Government Code section 844, which provides that "a lawfully arrested person who is brought into a law enforcement facility for the purpose of being booked … becomes a prisoner, as a matter of law, upon his or her initial entry into a prison, jail … pursuant to penal processes." The Legislative Committee Comments further clarify that "[a] person in the custody of a law enforcement officer but undergoing medical treatment in a county hospital would be considered a prisoner as defined in this section." Plaintiffs alleged that Mr. Essex was arrested, brought to jail for booking, and taken from the jail in a squad car with instructions to be taken to the hospital. (*See* Compl. ¶¶ 30-44.) Upon having medically screened and discharged Essex, hospital personnel were instructed to provide the "law enforcement officer" with medical documentation. (Pre-Booking Hospital Referral.) Mr. Essex was with the Officers until they abandoned him with a certificate of detention. (Compl. ¶ 44.) Based on these allegations and pursuant to Section 844, Plaintiffs sufficiently alleged that Mr. Essex was a prisoner for purposes of liability under Section 845.6.

Alternatively, the County argues that Plaintiffs failed sufficiently to allege that Mr. Essex needed immediate medical care, arguing that Plaintiffs alleged only negligence based on the Nurse's failure to correctly assess Mr. Essex's medical needs. This argument misconstrues Plaintiffs' theory of the case. (*Cf.* ECF No. 27, "Opp'n to County" at 18.) As alleged in the Complaint, Plaintiffs' theory is that the Nurse correctly assessed Mr. Essex as in "medical distress," including in need of insulin and hydration. (*See* Compl. ¶ 38; *see also id.* ¶¶ 34-37, 40, 51, 53, 54 ("urgent medical needs"); Pre-Booking Hospital Referral; Medical Record.) On this basis, the Nurse refused to book Mr. Essex into jail and referred him to the hospital. (Pre-Booking Hospital Referral;

Compl. ¶¶ 38-40, 52.)  Accordingly, Plaintiffs sufficiently alleged that the Nurse knew that Mr. Essex was in need of immediate medical care.

The County's motion to dismiss the claim for violation of California Government Code section 845.6 is denied.  Plaintiffs conceded dismissal of this claim as to Naphcare and Doherty.  (Opp'n to Naphcare at 16.)

### 3. Negligence

Plaintiffs alleged that Defendants breached their duty of due care for Mr. Essex's health and physical safety because it was foreseeable that, barring emergency medical care, Mr. Essex's symptoms would worsen and cause physical injury or death.  (Compl. ¶¶ 98-100.)  The moving Defendants argue that the claim should be dismissed because they did not sufficiently allege a duty of due care.

The County argues that the negligence claim is barred by California Tort Claims Act, Cal. Gov't Code § 815(a), because Plaintiffs failed to identify a statutory basis necessary to except the claim from governmental immunity.  Section 815(a) provides that "[e]xcept as otherwise provided by statute[, a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."

In their opposition, Plaintiffs identify California Government Code section 815.6 as a basis for negligence liability against the County.[5]  (Opp'n to County at 15-16.) Section 815.6 provides that

> [w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

---

[5]  To the extent Plaintiffs also identified California Government Code section 820(a) (*see* County Opp'n at 15), it is irrelevant to the County's motion, as it refers to liability of public employees rather than liability of public entities.

15

1  Plaintiffs alleged that the County had "a duty to operate and manage the Imperial County
2  Jail in a manner so as to prevent the acts and/or omissions" comprising the alleged
3  constitutional violations, as well as a duty to protect Mr. Essex's health and physical
4  safety while in custody.  (Compl. ¶ 98.)
5      The County does not dispute the substance of Plaintiffs' opposition argument but
6  contends that the negligence claim should be dismissed because Plaintiffs did not identify
7  Section 815.6 in the Complaint as a basis for liability.  (*See* County Reply at 6-7.)  The
8  County relies on *Searcy v. Hemet Unified School District,* 177 Cal.App.3d 792, 802
9  (1986) ("every fact essential to the existence of statutory liability must be pleaded with
10 particularity"), and *Susman v. City of Los Angeles,* 269 Cal. App. 2d 803, 809 (1969)
11 ("statutory causes of action must be pleaded with particularity").
12     The County's argument is unavailing because procedural matters in federal court
13 are governed by federal law even with respect to state law causes of action.  *See Hanna v.*
14 *Plumer*, 380 U.S. 460 (1965).  Accordingly, the specificity of pleading, including
15 pleading of state law claims, is governed by Rule 8(a)(2).  *See Starr v. Baca,* 652 F.3d
16 1202, 1212 (9th Cir. 2011).  The notice pleading requirement of Rule 8(a)(2) does "not
17 countenance dismissal of a complaint for imperfect statement of the legal theory
18 supporting the claim asserted[,]" *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 11
19 (2014), and does not require a plaintiff to cite statutes in support of his or her claims for
20 relief, *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008).
21     For the foregoing reasons, the County's motion to dismiss the negligence claim is
22 denied.  Plaintiffs agreed to dismiss the negligence claim against the Nurse.  (Opp'n to
23 Naphcare at 16.)  Plaintiffs did not assert negligence against Naphcare.  (*See* Compl. ¶¶
24 98-110.)
25 / / / / /

### D. Punitive Damages

In their Complaint, Plaintiffs request punitive damages. (Compl. ¶¶ 66, 86, 95-96, 110-11.) Naphcare and the Nurse move to strike[6] any claims for punitive damages against them arguing that Plaintiffs have not alleged that Naphcare's or the Nurse's conduct was malicious, reckless, oppressive, or fraudulent.

A plaintiff may recover punitive damages based on a constitutional violation under Section 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). A plaintiff may recover punitive damages for state law violations if the defendant acted with "oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Under the latter standard, "oppression" and "malice" include conduct "with a … conscious disregard" of another's rights. *Id.* § 3294(c)(1) & (2).

Plaintiffs oppose Defendants' motion arguing that they alleged sufficient facts to support an inference that Naphcare and the Nurse acted with a reckless indifference and/or callous disregard of Mr. Essex's constitutional rights. As discussed throughout this Order, the Court agrees that Plaintiffs' allegations in this regard are sufficient. Accordingly, the motion to strike Plaintiffs' request for punitive damages against Naphcare and the Nurse is denied.

/ / / / /

---

[6] Defendants move to strike punitive damages requests under Rule 12(f). However, claims for damages are not a proper subject of a Rule 12(f) motion to strike. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). They are more appropriately addressed under Rule 12(b)(6). *Id.*

### III. CONCLUSION

Motions to dismiss filed by Naphcare, Inc., Rosemary Doherty, and the County of Imperial are denied. The sixth and eighth causes of action alleged against Naphcare, Inc. and Rosemary Doherty are dismissed with Plaintiffs' agreement.

**IT IS SO ORDERED.**

Dated: February 18, 2025

for Hon. M. James Lorenz
United States District Judge